UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

          vs.                                                       **NOTICE OF MOTION**

                                         **08 Cr. 285 (KMK)**

TRENT YOUNG,

                            Defendant
-------------------------------------------------------X

      PLEASE TAKE NOTICE that, upon the affirmation of Gary Greenwald, Esq., dated August 13, 2008, the affidavit of Trent Young sworn to the 13th day of August, 2008, and upon the annexed papers and upon the papers and proceedings heretofore had herein, the undersigned will move this Court, at a Motion Term thereof, to be held at the Federal Courthouse, 300 Quarropos Street, White Plains, New York, on a date to be set by the Court, for the following relief:

      1.     An Order, pursuant to F.R.C.P. Rule 12(b)(3)(C), suppressing statements attributed to the defendant upon the ground that such statements were obtained in violation of the defendant's rights under the Fifth and Sixth Amendments, or in the alternative a hearing to determine the same; and

      2.     An Order, pursuant to F.R.C.P. Rule 12 (b)(3)(C), suppressing physical evidence upon the ground that such was obtained in violation of the defendant's rights under the Forth Amendment, or in the alternative a hearing to determine the same; and

      3.     An Order, pursuant to the Due Process clause of the Fifth and Fourteenth Amendments to the Constitution, for the disclosure of exculpatory or favorable evidence requested herein; and

4.      An Order, pursuant to 18 U.S.C. §3500, requiring the Government to disclose all statements and reports within the meaning of the *Jencks Act;* and

Together with such other and further relief as the Court deems just and proper.

Dated: August 13, 2008

Gary Greenwald (#GG4605)
*Attorneys for Defendant*
Greenwald Law Offices
99 Brookside Avenue
Chester, New York 10918

To:     UNITED STATES DISTRICT COURT, SDNY
Clerk of the Court
United States Courthouse
300 Quarropas Street
White Plains, New York 10601
***Courtesy Copy Via First Class Mail***

UNITED STATES ATTORNEY'S OFFICE, SDNY
Attention.: Marcia Cohen, AUSA
U.S. Attorney's Office, SDNY
300 Quarropas Street- 3rd Floor
White Plains, New York 10601
***Courtesy Copy Via First Class Mail***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

               vs.

                                        **AFFIRMATION IN SUPPORT**
                                           **OF MOTION TO**
                                     **SUPPRESS EVIDENCE**
                                      **AND OTHER RELIEF**

                                           **08 Cr. 285 (KMK)**

TRENT YOUNG,

                              Defendant
------------------------------------------------------X
STATE OF NEW YORK  )
                      ) ss.:
COUNTY OF ORANGE  )

       GARY GREENWALD, ESQ., being duly admitted to practice before the Courts of

the Southern District of New York, affirms the following under the penalties of perjury:

       1.    I am an attorney at the Greenwald Law Offices, attorneys of record for the

Defendant, Trent Young, in the above-captioned matter.

       2.    I submit the within Affirmation based upon my own personal knowledge of the

facts herein, as well as upon information and belief. The sources of my information and

grounds for my belief being conversations with members of my staff as well as an investigation

into the facts.

       3.    Mr. Young, a New York City Police Officer with no prior criminal history, was

charged in a three (3) count indictment with three (3) separate counts of Transportation of a

Minor With Intent to Engage in Criminal Sexual Activity in violation of Title 18, United States

Code, Section 2423(a).  Attached hereto as **Exhibit A** is a copy of the Indictment.

4.    The Defendant now respectively moves, pursuant to rules 12 and 41 of the Federal Rules of Criminal Procedure, for an order suppressing as evidence all evidence, oral or tangible, obtained directly or indirectly from:

A.    The arrest, detention, and interrogation of the defendant on December 27, 2007, such arrest, detention, and interrogation being in violation of defendant's constitutional rights.

B.    The search and seizure of property from premises known as 26 Maple Drive, Middletown, New York on December 27, 2007 and on January 27, 2008; and the search and seizure of property from premises known as 179 Cahill Cross Road, Suite #308, West Milford, New Jersey on January 10, 2008; and the search and seizure of contents of Samsung cellular phone # RVWP7419471, and the search of a black "systemax" computer tower with external hard drive, computer cd's and computer discs, and silver hp digital camera with memory card seized for 26 Maple drive, Middletown, New York on December 27, 2007, such searches and seizures being in violation of defendant's rights under the Fourth Amendment to the United States Constitution.

As grounds for this motion, counsel states as follows:

**SUPPRESSION OF MR. YOUNG'S STATEMENTS**

5.    The defendant is charged by indictment with the crime of Transportation of a Minor With Intent to Engage in Criminal Sexual Activity in violation of Title 18, United States Code, Section 2423(a).

2

6.    On December 27, 2007, defendant was arrested at County Route 78 in Middletown, New York at approximately 4:30 a.m. This arrest was made without a warrant and without probable cause to believe that the defendant had committed a felony.

7.    Following the defendant's arrest, the defendant was taken to police headquarters and questioned.  Despite requesting an attorney, Mr. Young was continually questioned and now certain statements are alleged to be attributed to him. Because these statements were taken from Mr. Young after he specifically requested to speak to an attorney, the statements made by the defendant were involuntary and the result of violations of the Fourth, Fifth, and Sixth Amendments to the United States Constitution.

8.    On the above mentioned day, Mr. Young left his house at approximately 4:20 a.m. and began to drive to work. Shortly thereafter he was stopped by the City of Middletown Police. Mr. Young was directed out of his vehicle. He was then directed to the back of the vehicle, patted down, and searched. The Police then placed Mr. Young in handcuffs and  he was placed under arrest. He was then transported to the City of Middletown Police station.(See Affidavit of Trent Young at Exhibit **B**)

9.    While at the station, he was handcuffed to a rail on the wall in an interrogation room. Two officers then entered the room and Mr. Young requested an attorney. After being advised of this, the officers left the room. Shortly thereafter, the officers returned to the room and once again initiated a conversation with Mr. Young, insisting that he speak with them. Throughout the course of this conversation, Mr. Young, after his initial request for an attorney, asked for an attorney on several different occasions. (See Affidavit of Trent Young at Exhibit **B**)

10.    On May 29, 2008, our office received additional discovery relating to this case.

3

Included in that discovery was a report drafted by Detective Matthew Johnson of the City of Middletown Police Department. (Attached hereto as Exhibit **C** is a copy of the report) This report purportedly reflects statements made by Mr. Young. The report indicates that "suspect was taken into custody and transported back to MPD in by PO Franck." (See report at Exhibit **C**)

11.    Critically, this report itself indicates that Mr. Young requested an attorney on at least three (3) different occasions. Despite these requests, the police continued to question Mr. Young. Although the report does not reflect that Mr. Young requested an attorney at the beginning of the interview, as Mr. Young recalls, it does indeed show he requested an attorney. As such, any statements taken from Mr. Young after he requested an attorney must be suppressed as a matter of law.

12.    Once a suspect asserts his right to counsel, interrogation must cease "until counsel has been made available to him." *Edwards v. Arizona,* 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed2d 378 (1981). "If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence as trial." *McNeil v. Wisconsin,* 501 U.S. 171, 177, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

13.    The Supreme Court of the United States in *Edwards v. Arizona,* held that where a defendant had invoked his right to have counsel present during custodial interrogation, valid waiver of that right could not be established by showing only that he responded to police-initiated interrogation after being again advised of his rights, thus use of defendant's confession against him at his trial, violated his rights under Fifth and Fourteenth Amendments to have counsel present during custodial interrogation.

4

14.    Additionally, the United States Court of Appeals, Second Circuit in *U.S v. Quiroz*, 13 F.3d 505, applying *Edwards*, held that defendant's statement was taken in violation of his Miranda Rights. The Court in *Qurioz* opined:

> Under *Edwards,* a suspect who has expressed his desire to deal with law enforcement agents only through counsel cannot properly be "subject[ed] to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85, 101 S.Ct. At 1633. The *Edwards* Court reasoned that "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485, 101 S.Ct. At 1633. The *Edwards* holding was intended to create a rule of "clear, 'bright-line' quality," *Michigan v. Jackson*, 475 U.S. 625, 634, 106 S.Ct. 1404, 1410, 89 L.Ed2d 631 (1986), in order " 'to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights,' "*Minnick v. Mississippi,* 798 U.S. 146, 150, 111 W.Ct. 486, 489, 112 L.Ed.2d 489 (1990) (quoting *Michigan v. Harvey,* 494 U.S. 344, 350, 110 S.Ct. 1176, 1180, 108 L.Ed2d 293 (1990)).

15.    "The law is equally clear that not every request for counsel by a defendant is tantamount to an exercise by that defendant of his right to counsel under the Fifth Amendment. The test to determine if the Fifth Amendment has in fact been invoked and thus that *Edwards* applies is whether the defendant made "some statement that can reasonably be construed to be an expression of a desire for the assistance of any attorney in dealing with custodial interrogation by police." *U.S. v Bin Laden*, 160 F. Supp 2d 670 at 680 (SDNY). Furthermore, "if the accused invoked his right to counsel, courts may admit his responses to further police questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *U.S. v Perez*, 948 F. Supp. 1191, (SDNY) citing *Smith v. Illinois,* 469 U.S.91; *Edwards v. Arizona,* 451 U.S.477; *Michigan v. Jackson*, 475 U.S. 625.

5

16.    Under the facts of the instant matter, there is absolutely no question that Trent Young requested an attorney. In fact, Mr. Young states that before the police began questioning him, he requested a lawyer. As such, under the law of *Edwards*, the police should not have questioned him further. Any statements taken after this initial request must therefore be suppressed as a matter of law.

17.    As stated previously, critically, even contained in the police report, are statements that Mr. Young requested an attorney. The first of which states: "we talked a little bit about a phone call that Young stated the we were listening too. Young stated the he did not the phone call without an attorney[1]. So we moved on in the interview." (See Exhibit **C**) Therefore, even despite when Mr. Young states he requested an attorney, it is clear from the report that Mr. Young requested an attorney. Despite this request, the police continued to question him.

18.    Since this statement by Mr. Young "can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by police," *Edwards* clearly applies, and was violated in every sense.  Since Mr. Young invoked his right to counsel, his responses to further police questioning  may be admitted only on a finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked .

19.    Under the facts of the instant case, no such findings can be made. First of all, it is clear all of the discussions were initiated by the police and not by Mr. Young. In fact, the report clearly states: "we moved on in the interview. We talked some more about he then

---

[1] It should be noted that there appears to be a typographical error in the report, however it is clear from this statement that Mr. Young requested an attorney.

offered Young a chance to take a polygraph test to prove to us that he was being truthful. Young stated the he would take a polygraph after speaking to his attorney. We continued the interview. We asked Young if he had ever been to the days in." (See report at Exhibit **C**) Critically this portion of the report not only demonstrates the police initiated more questions after Mr. Young requested an attorney, but that during the course of those questions, he once again requested an attorney. However, once again, despite this request for an attorney, and in clear violation of Mr. Young's rights, the police continued and asked him more questions.

20.    Clearly, after requesting an attorney, Mr Young never initiated further discussions with the police, in fact all of the conversations were a direct result of the police insisting Mr. Young speak to them. Furthermore, there can be no showing that Mr. Young knowingly and intelligently waived the right he had invoked. In fact, the report reflects that Mr. Young once again requested an attorney.  The report reads "at that point young requested to have a lawyer present, we then ended the interview at 6:10 a.m." (See Exhibit **C**)

21.    Mr. Young stated that he first requested an attorney before the police asked him any questions at all. The report provided by the Government in this matter, only supports Mr. Young's affidavit that he requested an attorney, not only once but on multiple occasions. The police were obviously aware of this request, but continued to question him. Doing so was in direct contradiction of Mr. Young's rights, and under *U.S. v. Edwards* and it's progeny, all statements allegedly attributed to Mr .Young, must be suppressed as a matter of law, or in the alternative a hearing should be granted to determine the same.

## SUPPRESSION OF PHYSICAL EVIDENCE SEIZED

22.    The search and seizure of property from premises known as 26 Maple Drive, Middletown, New York on January 27, 2008; and the search and seizure of property from premises known as 179 Cahill Cross Road, Suite #308, West Milford, New Jersey on January

10, 2008; and the search and seizure of contents of Samsung cellular phone # RVWP741947l, were unlawful because they were made pursuant to a warrant and affidavit relying on previously illegally obtained evidence.

23.    The affidavits on which these warrants were issued were based on information obtained from Mr. Young in violation of his constitutional rights, while the defendant was in custody.

24.    Specifically, each of the affidavit in support of the above stated warrants contain the following statement or information: "On or about December 27, 2007, Trent Young was arrested by members of the Middletown Police Department. Subsequent to his arrest, Young denied having sexual intercourse with Victim 1 and denied going to the Days Inn in Middletown, New York overnight. When asked whether he'd ever stayed a the Days Inn in Middletown for a few hours, Young admitted that he took Victim 1 to the Days Inn in Middletown, New York once and that he went there with her because he wanted to hang out with her." (See paragraph. 11 of affidavit in support of the search and seizure of property from premises known as 179 Cahill Cross Road, Suite #308, West Milford, New Jersey on January 10, 2008; see paragraph 9 of affidavit in support of and the search and seizure of contents of Samsung cellular phone # RVWP741947l; see paragraph 10 of affidavit in support search and seizure of property from premises known as 26 Maple Drive, Middletown, New York on January 27, 2008)

25.    As set forth thoroughly above, these statements were taken from Mr. Young in violation of his constitutional rights. As such, any evidence derived from this illegally obtained evidence must be suppressed as a matter of law, or in the alternative a hearing should be held to determine this. *Wong Sun v. United States*, 371 U.S. 471 (1963); *Aldeman v. U.S.*, 394 U.S. 165

## REQUEST TO DISCOVER EXCULPATORY EVIDENCE PURSUANT TO *BRADY v. MARYLAND*

26.     The Defendant, Trent Young, by and through his attorneys, respectfully requests this Court to instruct the United States Attorney or his Assistant to reveal all exculpatory evidence which might mitigate punishment in this case. It is our position, upon information and belief, that the statements of the alleged victims in this case contain exculpatory information, and as such the defense should be provided the statements at this time. These statements likely contain inconsistent and exculpatory information that constitute *Brady* material.

27.     Further, defendant would ask the Court to require the United States Attorney or his assistant to thoroughly question all law enforcement agents and witnesses who participated in the investigation and preparation of this case to determine if there exists any exculpatory or mitigating evidence.

28.     The defendant would assert that he has the right to discover exculpatory evidence and evidence in mitigation by virtue of his rights to effective assistance of counsel, to cross-examine, due process and equal protection. United States Constitution Amendments V, VI and XIV §2.

29.     This right would include the right to discover all notes or statements required or prepared by the State, as would contain or would lead to exculpatory evidence.

30.     In addition, the defendant would request that the Court inspect the Government's files and question the United States Attorney or his assistant to determine if there is any exculpatory or mitigating evidence in his files.

31.     The exculpatory or favorable evidence requested herein is discoverable pursuant to the due process clause of the Fifth Amendments to the Constitution. *Brady v. Maryland,* 373 U.S. 83 (1963).

32.     This right of defendant to disclosure of "favorable evidence exits whether such evidence is material to the defendant's guild or to mitigation of his punishment, *"Brady v. Maryland,* U.S. 813 (1963) at p. 87, and regardless of whether such exculpatory evidence would be admissible in defendant's behalf of trial...or in obtaining further evidence." *Giles v. Maryland,* 386 U.S. 66 (1967) at p. 74. *United States v. Gleason,* 264 Supp. 850 (S.D.N.Y 1967) at page 886.

33.     This right to disclosure under *Brady* should include the right to pretrial discovery by defendant. *United States v. Gleason,* 265 Supp 880 (S.D.N.Y. 1967) at p. 884-885; *United States v. Morrison,* 43 F.R.D.266 (ND 111. 1967); *United States v. Ahmad,* FRD 186 (M A Pa 1971) at p. 193-194; *United States v. Joseph,* 533 F.2d 282 (5th Cir. 1976); *Reed v. General Motors,* 773 F.2d 660 (5th Cir. 1985).

34.     Further, where exculpatory evidence is obtained in a statement of a Government witness, discoverable under the *Jencks Act* only after the witness has testified, then the *Jencks Act's* "...statutory restrictions must be accommodated to the demands of due process," and the relevant portions of the statement disclosed prior to trial. *United States v. Gleason,* 265 F. Supp. 880 (S.D.N.Y. 1967) at p. 887. *Brady* and its progeny require that the Government provide the defendant with the exculpatory, mitigating or favorable evidence not in possession of the defense. Consequently, if the defense is unaware of such evidence, it would be hard pressed to request same with any particularity. If the defense does not know the existence of

the evidence, it may not be able to request its production.  "A murder trial - indeed any criminal proceeding - is not a sporting event." (Fortis, Jr. Concurring) *Giles v. Maryland,* 386 U.S. 66 (1967).

35.    The United States Attorney or other agents of the United States Government involved in the investigation and preparation of this case have the possession, custody or control of all notes and files used in preparation of this case, or though the exercise of reasonable diligence would be able to obtain such possession or locate the whereabouts of such items or information.  The United States Attorney or his assistants should be required to review all notes and files used in preparation of this case and to determine if there is any exculpatory or mitigating evidence in said files.  The United States Attorney or his assistant should be required to question all law enforcement agents who participated in the investigation and preparation of this case to determine if any exculpatory or mitigating evidence exists.

36.    Specifically, any inconsistent statements of the alleged victims would likely constitute Brady material that we must be provided with.  Relative to this issue, I believe that the Government, at this time, must provide copies of the victim's statements to the defense. It is clear from reviewing the applications in support of the warrants that the victims made statements that are not supported by the evidence seized.  For example, the victim claimed that Mr. Young took photographs of her while she was naked.  Critically no such photographs were recovered.   Therefore, the statements not being consistent with the evidence recovered, constitute Brady material and as such, we should be provided with these statements at this time. Furthermore, any of the statements of the alleged victims are critical to the defendant's alibi defense, and are necessary to prepare the same.  As such, we request the Court direct that the

Government provide those statements to us immediately.

## REQUEST FOR EARLY DISCLOSURE OF *JENCKS ACT* MATERIAL

37.    The defendant, Trent Young, by and through his attorneys, respectfully moves this Court to order the Government to disclose all statements and reports within the meaning of the *Jencks Act,* 18 USC §3500, not less than three weeks prior to the commencement of the trial in this case.  As grounds therefore, the defendant asserts the following:

38.    Production of *Jencks Act* material at trial will necessitate extensive delays during trial to allow Counsel an opportunity to review said material prior to cross-examination of Government's witnesses.

39.    The Court has the authority to structure the trial to assure fairness to all parties. Strict application of the *Jencks Act* violates the following constitution guarantees:

1.    Meaningful cross-examination and confrontation of Government witnesses.  The defendants rarely know prior to trial who the Government witnesses are and, therefore, cannot conduct any pretrial investigation of their character, veracity and reputation.

2.    Compulsory process to trial, if the Government does not disclose the existence of witnesses favorable to the defendant.

3.    Effective assistant of counsel.  Literal adherence to the *Jencks Act* requires defense counsel to "shoot from the hip" and precludes careful planning of defense strategies prior to trial.

4.    A fair trial.  Strict adherence to the *Jencks Act* coupled with the meager discovery rules renders ineffective any attempt to create a viable trial strategy until the trial is well under way.

40.    Disclosure of information impeaching a witness' credibility must be timed to enable effective preparation of trial. *United States v. Ploisi*, 416 F.2d 150, 573-578 (2nd Cir. 1969); *United States v. Baxter*, 492 F.2d 150, 173-174 (9th Cir. 1973), *cert. denied*, 417 U.S. 940 (1974). See, *United States v. Opager*, 589 F.2d 799 (5th Cir. 1979). As pointed our in *United States v. Pollack*, 534 F2d 964, 973 (D.C. Cir. 1976) (Lumbard J., sitting by designation):

> "Disclosure by the Government must be made at such time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion required pretrial disclosure, See e.g., *United States v. Ellmore* 423 F.2d 775, 779 (4th Cir. 1970); *United States v. Deutsche*, 373 F. Supp. 289, 290-291 (S.D.N.Y. 1974)."

See also, *Grant v. Alldredge*, 498 F.2d 376, 282 (2nd) Cir. 1974); *Clay v. Black*, 479 F2d 319 (6th Cir. 1973) (*per curiam*).

41.    In other circuits, the prosecution must produce requested evidence, which materially favorable to the accused either as direct or impeaching evidence. The appropriate time is as early as possible to enable defense counsel effectively to use it in preparing the case for trial. Compare *United States v. Campagnuolo*, 592 F.2d 852 (5th Cir. 1979), with *United States v. Opague*, 589 F.2d 799 (5th Cir. 1979). Indeed, even when the favorable information takes the form of a witness' statement otherwise protected from pretrial discovery by the *Jencks Act* (18 USC §3500), the prosecution must nonetheless disclose it as far in advance of trial as due process may practically required for the defense to make fair use of it. *United States v. Campagnuolo*, supra.

42.    In Moore's Federal Practice, it is stated that "although the literal terms of the

stature do no require the Government to turn over '3500 material' until the witness has

testified, where there is a large volume of such material, the Court should require a turnover

in advance of the testimony to avoid delaying the trial while counsel pursues the material

(Section 16.10(1) at p. 177.

    43.    In the event this motion is denied, defendant further requests that the

Government comply with the dictates of the *Jencks Act* by tendering all such material to

defense counsel outside the presence of the jury.

    44.    As stated in *Gregory v. United States,* 369 F2d. 191 (D.C. 1966);

> "It is familiar law that prior consistent statements are not
> admissible in evidence, and consequently it is improper to require
> a procedure, in exercising Jencks Act rights, which many permit
> the inference that the prior statements received are consistent with
> the witnesses' testimony on trial. We perceive no reason, other
> than to prejudice the defendant in the exercise on his Jencks Act
> rights, to require defense counsel to request and receive Jencks
> Act statements in the presence of the jury."

**WHEREFORE,** it is respectfully requested that the Court issue an Order, pursuant to

F.R.C.P. Rule 12(b)(3)( C), suppressing statements attributed to the defendant upon the ground

that such statements were obtained in violation of the defendant's rights under the Fifth and

Sixth Amendments; and an Order, pursuant to F.R.C.P. Rule 12(b)(3)( C), suppressing physical

evidence upon the ground that such was obtained in violation of the defendant's rights under

the Fourth Amendment; or in the alternative grant hearings to determine the same, as well as

issue Orders granting the additional relief sought in the instant motion, together with such

other and further relief as the Court seems just and proper.

Dated:  August 13, 2008

Chester, New York

Gary Greenwald (#GG4605)
*Attorneys for Defendant*
Greenwald Law Offices
99 Brookside Avenue
Chester, New York 10918

To:    UNITED STATES DISTRICT COURT, SDNY
Clerk of the Court
United States Courthouse
300 Quarropas Street
White Plains, New York 10601
***Courtesy Copy Via First Class Mail***

UNITED STATES ATTORNEY'S OFFICE, SDNY
Attention.: Marcia Cohen, AUSA
U.S. Attorney's Office, SDNY
300 Quarropas Street- 3rd Floor
White Plains, New York 10601
***Courtesy Copy Via First Class Mail***

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x
UNITED STATES OF AMERICA            :

                                    :      INDICTMENT

        - v. -                      :

                                    :      08 Cr.

TRENT YOUNG,                        :

                    Defendant.
- - - - - - - - - - - - - - - - - -x

### COUNT ONE
(Transportation of Minor With Intent
To Engage in Criminal Sexual Activity)

The Grand Jury charges:

1.  In or about the Fall of 2006, in the Southern
District of New York and elsewhere, TRENT YOUNG, the defendant,
unlawfully, willfully and knowingly transported an individual who
had not attained the age of 18 years in interstate and foreign
commerce with the intent that the individual engage in sexual
activity for which any person can be charged with a criminal
offense, to wit, TRENT YOUNG, the defendant, transported Victim
1, who was under the age of 18, from Middletown, New York to West
Milford, New Jersey for the purpose of engaging in sexual
activity with Victim 1.

(Title 18, United States Code, Section 2423(a).)

<u>COUNT TWO</u>
(Transportation of Minor With Intent
To Engage in Criminal Sexual Activity)

The Grand Jury further charges:

2.  In or about September 2007, in the Southern District of New York and elsewhere, TRENT YOUNG, the defendant, unlawfully, willfully and knowingly transported an individual who had not attained the age of 18 years in interstate and foreign commerce with the intent that the individual engage in sexual activity for which any person can be charged with a criminal offense, to wit, TRENT YOUNG, the defendant, transported Victim 1, who was under the age of 18, from Middletown, New York to West Milford, New Jersey for the purpose of engaging in sexual activity with Victim 1.

(Title 18, United States Code, Section 2423(a).)


<u>COUNT THREE</u>
(Transportation of Minor With Intent
To Engage in Criminal Sexual Activity)

The Grand Jury further charges:

3.  In or about the Summer of 2006, in the Southern District of New York and elsewhere, TRENT YOUNG, the defendant, unlawfully, willfully and knowingly transported an individual who had not attained the age of 18 years in interstate and foreign commerce with the intent that the individual engage in sexual activity for which any person can be charged with a criminal offense, to wit, TRENT YOUNG, the defendant, transported Victim

2, who was under the age of 18, from Middletown, New York to West
Milford, New Jersey for the purpose of engaging in sexual
activity with Victim 2.

(Title 18, United States Code, Section 2423(a).)

_____
FOREPERSON

_____
MICHAEL J. GARCIA
United States Attorney

*United States District Court*

SOUTHERN DISTRICT OF NEW YORK

# THE UNITED STATES OF AMERICA

vs.

### TRENT YOUNG,

Defendant.

# INDICTMENT

### 08 Cr.

**(In Violation of Title 18, United States Code, Section 2423(a).)**

### MICHAEL J. GARCIA

United States Attorney.

### A TRUE BILL

Foreperson.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,

                    vs.

TRENT YOUNG,

                       Defendant
-------------------------------------------------------X
STATE OF NEW YORK      )
                            ) ss.:
COUNTY OF WESTCHESTER  )

**AFFIDAVIT OF
TRENT YOUNG**

**08 Cr. 285 (KMK)**

Trent Young, being duly sworn, deposes and says:

1.      I am the Defendant in the above-captioned matter.

2.      On the morning of December 27, 2007, I left my house at 26 Maple Drive located in the City of Middletown, New York at approximately 4:20 a.m. to drive to my job as an officer with the New York City Police Department.

3.      Shortly after pulling out of my driveway and proceeding on to the street, I was stopped by a member of the City of Middletown Police Department.

4.      The officer directed me out of my car, ordered me to the back of the car, and instructed me to put my hands on the trunk of the car, and proceeded to pat me down.

5.      The officer placed me under arrest and handcuffed me.

6.      I was then placed in the rear seat of the police car and transported to the City of Middletown Police station.

7.      While being transported to the police station I told the police officer driving me to the station that I wanted a lawyer.

8.      While at the station, I was taken into a small room that appeared to be an interrogation room, where I was handcuffed to a rail on the wall.

9.    Two officers entered the room and I told them that I wanted to speak to a lawyer and have one present.

10.    After being told this, the officers then left the room.

11.    A short time later the officers returned, and despite my request for an attorney, one of the officers insisted I speak with them and began to ask me questions relating to allegations that had been made against me.

12.    Throughout the course of this questioning, on several occasions, I repeated to the officers that I wanted to speak to a lawyer and have one present.

13.    Even though I requested an attorney, the officers continued to question me, without allowing me to speak to a lawyer.

14.    At no time after requesting an attorney did I ever initiate any conversations with the officers.

15.    Therefore, any statements taken from me were taken in violation of my constitutional rights.

**WHEREFORE,** it is respectfully requested that the Court suppress any evidence derived therefrom and the statements, or in the alternative, grant a hearing on the issues raised, and for such other and further relief as the Court deems just, proper and equitable.

_____
Trent Young

Sworn to before me this
_13th_ day of August, 2008.

_____
NOTARY PUBLIC

OMAR M. ABRAHIM
Notary Public, State of New York
NO. 01AB6080671
Qualified in Orange County
Commission Expires: September 23, 20_10_

**EXHIBIT C**

APR-23-2008 13:20  FROM:MIDDLETOWN DETECTIVE 8453426721        TO:19149931980        P.5/8
Printed: 12/27/2007        DETECTIVE'S SUPPLEMENTAL REPORT        Page:  1
                              Narrative #:    2

Officer Rank/Name: DET MATTHEW  JOHNSON

Department:Middletown Police Dept.
DD Number :

REDACTED

12/27/07- R/O, DET. MILLER, SGT. EWANCIW, PO FRANCK AND TWO NYPD IAB SGTS., SGT.
SELSEY AND SGT. GUZZINO WENT TO THE AREA OF 26 MAPLE DR. AND WAITED FOR SUSPECT, TRENT
YOUNG TO EXIT HIS RESIDENCE. YOUNG GOT INTO A SILVER TOYOTA CAMRY. PO FRANCK AND SGT.
EWANCIW STOPPED THE SUSPECT ON CT. 78. SUSPECT WAS TAKEN INTO CUSTODY AND TRANSPORTED
BACK TO MPD IN BY PO FRANCK. DURING THE ENTIRE PROCESS, YOUNG, NEVER INQUIRED ABOUT
THE APPREHENSION, THE STOP, OR ANYTHING ELSE.
     AT MPD, R/O AND DET. MILLER INTERVIEWED YOUNG IN THE DOWNSTAIRS INTERVIEW ROOM.
R/O ADVISED YOUNG OF HIS MIRANDA WARNING (4:46AM) AND HE AGREED TO SPEAK TO DETECTIVES
WITHOUT THE PRESENCE OF AN ATTORNEY. WE EXPLAINED TO YOUNG THE PURPOSE OF OUR
INVESTIGATION. WHEN EXPLAINED TO HIM THE ALLEGATIONS OF THE CASE. WE TOLD HIM ABOUT
HIS STUDENTS COMPLAINING THAT YOUNG WOULD ASK THEM TO TAKES THEIR CLOTHES. WHEN
TALKING ABOUT THIS FACET OF THE CASE, YOUNG USED THE THE TERM "DEROBE" WHICH WAS THE
WORD THAT STUDENT JAIMEE RECALLED YOUNG USING. WE ASKED TO EXPLAIN THE VICTIM'S
MOTIVATION FOR THESE ALLEGATIONS IF THEY WERE NOT TRUE. HE STATED THAT THERESEE IS
REPORTING THIS BECAUSE YOUNG TOLD HER THAT HE MIGHT TELL THE VICTIM'S PARENTS ABOUT
HER SEEING HER NEW BOYFRIEND TOM. HE COULD NOT COME UP WITH A MOTIVATION FOR JAIMEE'S
ALLEGATIONS. WE TALKED A LITTLE BIT ABOUT A PHONE CALL THAT YOUNG STATED THAT WE WERE
LISTENING TOO. YOUNG STATED THAT HE DID NOT THE PHONE CALL WITHOUT AN ATTORNEY. SO WE
MOVED ON IN THE INTERVIEW. WE TALKED SOME MORE ABOUT HE THEN OFFERED YOUNG A CHANCE TO
TAKE A POLYGRAPH TEST TO PROVE TO US THAT HE WAS BEING TRUTHFUL. YOUNG STATED THAT HE
WOULD TAKE A POLYGRAPH AFTER SPEAKING TO HIS ATTORNEY. WE CONTINUED THE INTERVIEW. WE
ASKED YOUNG IF HE HAD EVER BEEN TO THE DAYS IN. HE STATED HE NEVER STAYED THERE OVER
NIGHT. WE THEN ASKED HIM IF HE EVER STAYED THERE FOR A FEW HOURS. YOUNG ADMITTED THAT
HE DID TAKE VICTIM, THERESE, THERE ONCE. WE ASKED HIM WHY HE WOULD TAKE HER THERE. HE
STATED THAT HE JUST WANTED TO HANG OUT WITH HER. WE THEN ASKED HIM, WHY WOULD A 39
YEAR OLD GUY  TAKE A 15 YEAR OLD GIRL TO THE DAYS INN FOR A FEW HOURS. AT THAT POINT
YOUNG REQUESTED TO HAVE A LAWYER PRESENT, WE THEN ENDED THE INTERVIEW AT 6:10AM.
     DURING THE INTERVIEW, YOUNG WAS OFFERED FOOD AND COFFEE. HE ONLY REQUESTED WATER.

Printed: 12/27/2007                    **DETECTIVE'S SUPPLEMENTAL REPORT**                    Page:   2
                                            Narrative #:    2

Officer Rank/Name: **DET MATTHEW  JOHNSON**

Department:Middletown Police Dept.                         REDACTED
DD Number :

    LATER DURING THE BOOKING PROCEDURE, WHEN I ASKED YOUNG ABOUT THE LAST SCHOOL HE
ATTENDED, HE STATED THAT NOW HIS WIFE IS GOING TO FIND OUT ABOUT HIS EX-GIRLFRIEND
BECAUSE THE EX-GIRLFRIEND IS THE PERSON THAT HE TOOK TO THE DAYS INN.

    LATER ON THIS DATE MEMBERS OF MPD CONDUCTED A SEARCH WARRANT AT TRENT YOUNG'S
RESIDENCE. ITEMS SECURED DURING THE SEARCH WARRANT INCLUDE, A COMPUTER, CD'S,
PREGNANCY TEST KIT, HP DIGITAL CAMERA, PAPERWORK, INCLUDING THERESE'S "GREEN BELT"
OATH, AND VARIOUS OTHER ITEMS.
    WEST MILFORD, NJ PD WAS ALSO CONTACTED AND THEY ARE INVESTIGATING THE ALLEGATIONS
OF RAPE THAT TOOK PLACE IN THEIR JURISDICTION.

YOUNG WAS BOOKED AND PROCESSED. HE WAS CHARGED WITH ONE COUNT OF RAPE 2 AND ONE COUNT
OF RAPE 3.

Signature _____          Field Recommendation: _____

D.O.: _____    Sqd. Superv.: _____    C.O.: _____